**SIGNED THIS: December 08, 2005**

_____
**LARRY LESSEN
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| PAUL S. CARLSON and | ) | |
| LYNNE D. CARLSON, | ) | Case No. 04-73994 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| ROBERT T. PIERCE and | ) | |
| PATRICIA A. PIERCE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 05-7004 |
| | ) | |
| PAUL S. CARLSON, | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N

This matter is before the Court on the Defendant's Motion for Summary Judgment and the Plaintiffs' Response thereto.

-1-

On September 8, 2004, Defendant filed a petition in bankruptcy.  On January 7, 2005, Plaintiffs filed their Complaint to Determine Dischargeability of Debt.  The Complaint asserts three separate bases of non-dischargeability.

Capital Construction Services, LLC ("Capital") is a limited liability company organized under the laws of the State of Illinois.  The Plaintiff, Robert T. Pierce, was, at all relevant times, a 50% owner of Capital.  Plaintiffs, Robert T. Pierce and Patricia A. Pierce, have executed certain commercial security agreements, promissory notes, and guarantees for business loans at Bank of Springfield on behalf of Capital.  The Defendant, Paul S. Carlson, was, at all relevant times, a 50% owner of Capital. Capital was formed in 2002.  Its business purpose was to provide broadband, electrical, and sign service to customers. An Operating Agreement was executed on August 20, 2002, wherein the Defendant was designated to serve as manager of Capital.  At some point in 2002, Mr. Pierce and the Defendant determined that the company needed a line of credit with a bank.  Mr. Pierce and the Defendant went to Bank of Springfield, and Bank of Springfield apparently asked that Mr. and Mrs. Pierce and the Defendant and his wife to personally guarantee the loan.  To obtain the loan, Mr. and Mrs. Pierce and the Mr. and Mrs. Carlson had to provide the bank with personal financial statements. In December, 2002, Mr. Pierce and the Defendant prepared and submitted financial statements to obtain

bank financing.  Bank of Springfield subsequently made the loan to Capital.

Carlson was responsible for all financial operations, bookkeeping, accounting, and financial management of Capital from August 20, 2002, through March 31, 2004.  Capital has been insolvent since March 31, 2004. At about that time, Mr. Pierce and the Defendant decided to separate the business components of Capital.  On September 8, 2004, the Defendant subsequently sought bankruptcy protection.  Pursuant to the terms of the Operating Agreement, the filing of the bankruptcy petition by the Defendant dissolved Capital.

Count I of the adversary Complaint alleges fraud or defalcation while acting in a fiduciary capacity.  Plaintiffs contend that the Defendant breached certain standards of care and fiduciary duties that apply to members and managers of a limited liability company, including misuse of company property and employees, failing to file tax returns and pay employment taxes, creating false accounts, and failure to retain and maintain records.

Count II of the adversary Complaint alleges false pretenses and false representations on the part of the Defendant. Specifically, Plaintiffs contend that the Defendant "made a misrepresentation to the Bank of Springfield and to Mr. Pierce regarding his financial assets." Complaint *at p.* 9.

Count III of the adversary Complaint alleges the use of a false financial statement by the Defendant in December, 2002, in connection with obtaining the Bank of Springfield loan.

In order to prevail on a motion for summary judgment, Plaintiff must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056.  Rule 56(c) states in part as follows:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).  *See also* Dugan v. Smerwick Sewerage Co., 142 F.3d 398, 402 (7th Cir. 1998).  The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. Trautvetter v. Quick, 916 F.2d 1140, 1147 (7th Cir. 1990).  The burden is on the moving party to show that no genuine issue of material fact is in dispute.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  All reasonable inference drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion.  Parkins v. Civil Constructors of Illinois, Inc., 163 F.3d 1027, 1032 (7th Cir. 1998).  "Summary judgment is not an appropriate

occasion for weighing the evidence; rather the inquiry is limited to determining if there is a genuine issue for trial." <u>Lohorn v. Michal</u>, 913 F.2d 327, 331 (7th Cir. 1990).

With respect to Count I, Section 523(a)(4) provides as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> * * * *
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny(.)

In order for a plaintiff to prevail under § 523(a)(4), he must prove either (i) that the debtor committed fraud or defalcation while acting as a fiduciary, (ii) that the debtor is guilty if embezzlement, or (iii) that the debtor is guilty of larceny. Plaintiffs contend that the Defendant owed a fiduciary duty to Plaintiffs and that that duty was breached by Defendant's conduct. Plaintiffs do not allege that the Debtor committed embezzlement or larceny.

There is a split in authority on the question of whether fiduciary obligations between equals - for example, general partners in a partnership - are included under § 523(a)(4). In the Seventh Circuit, only those fiduciary obligations in which there is a substantial inequality in power or knowledge in favor of the debtor seeking the discharge and against the creditor resisting

discharge are included under § 523(a)(4).  *See* In re Marchiando, 13 F.3d 1111 (7th Cir. 1994); *see also* In re Woldman, 92 F.3d 546 (7th Cir. 1996).

Count I of the Complaint alleges that, "Carlson's control over the day to day business and ownership of fifty percent (50%) of the business gave him an ascendant position over Pierce and the freedom to run the Company as he deemed proper."  Complaint *at* p. 7.

Based upon the record, and viewing the facts in a light most favorable to the Plaintiff, the Court rejects any contention that there was a sufficient disparity in power or knowledge between Mr. Pierce and the Defendant to give rise to a fiduciary relationship under the standards required in the Seventh Circuit.  The Defendant may have been in charge of the daily operations of the Capital, but he was not "in an ascendant position" to the exclusion of the Plaintiff.  Both were equals in the company with equal rights. Plaintiff had various statutory rights, none of which he exercised until after the partnership became insolvent. Under these circumstances, the Court finds, as a matter of law, that there was, and could be, no fiduciary relationship between Mr. Pierce and the Defendant as defined and required under § 523(a)(4).  Accordingly, Defendant's Motion for Summary Judgment must be granted as to Count I of the Complaint.

With respect to Count II, Section 523(a)(2)(A) of the Bankruptcy Code states as follows:

-6-

>    (a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>
>    (2)  for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
>
>    (A)  false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

Count II of the Complaint alleges that the Defendant "made a representation to the Bank of Springfield and to Pierce regarding his financial assets." Complaint *at* para. 62. Subsequent paragraphs of Count II of the Complaint make reference to the Defendant's purportedly false financial statement.

By its very language, Section 523(a)(2)(A) relates to false statements and fraud "other than a statement respecting a debtor's or an insider's financial condition". This provision does not deal with deception carried out by means of a statement relating to the debtor's financial condition. *See* Collier on Bankruptcy, ¶ 523.08[1]. False financial statements are dealt with separately in § 523(a)(2)(B) and the exclusion from paragraph (A) makes clear that the false financial statement exception falls within a category separate from the false representation or actual fraud exception. Id. The factual allegations in Count II pertain to a written financial statement and, thus, do not, as a matter of law, give rise to relief under § 523(a)(2)(A). Accordingly, the

Defendant's Motion for Summary Judgment must be granted as to Count II of the Complaint

With respect to Count III of the Complaint, § 523(a)(2)(B) of the Bankruptcy Code excepts from discharge certain debts arising out of the debtor's issuance of false financial statements and specifically provides as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> . . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>
> . . . .
>
> (B) use of a statement in writing–
>
> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
> (iv) that the debtor caused to be made or published with intent to deceive(.)

11 U.S.C. § 523(a)(2)(B).

-8-

The statement prepared by the Defendant and submitted to Bank of Springfield revealed a net worth of approximately $165,000. However, the bank discounted the statement because it included assets with limited market value, e.g. furniture, insurance policies, etc. The bank determined that the Defendant's net worth, for lending purposes, was $50,000. There is no allegation that the financial statement was in any other manner false; that is, the only alleged false element of the financial statement is the valuation of the assets disclosed thereon.

Mr. Pierce was personally involved in the discussion with the bank and was aware that the bank had set the Defendant's net worth at only $50,000. There was nothing purposefully false about the financial statement; rather, there was a difference of opinion as to the valuation of certain assets. The assets were fully disclosed, the dispute in valuation was made known to Mr. Pierce, and Mr. Pierce knew that the bank did not agree with the Defendant's calculation of his net worth. Under these circumstances, the Plaintiffs cannot prevail under Section 523(a)(2)(B) as a matter of law. First, the financial statement was not materially false, as required by § 523(a)(2)(B)(i). Secondly, even if a trier of fact or reviewing court were to find the financial statement materially false, Plaintiffs cannot, even under the most generous consideration of the facts, demonstrate justifiable reliance on the financial statement. Mr. Pierce knew

that the Defendant's valuations were deemed incorrect by Bank of Springfield.  He knew that Bank of Springfield did not rely on the Defendant's valuation to make the loan.  He also knew was present during and involved in the discussions relating to the financial statement and the valuations contained thereon.  Accordingly, the Defendant's Motion for Summary Judgment as it relates to Count III of the Complaint must be granted.

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted as to Counts I, II and III of Plaintiffs' Complaint and judgment is entered in favor of the Defendant on all three counts.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###